635 F.2d 1228
 Earl BRATTON et al., Plaintiffs-Appellants,
v.
Joel SHIFFRIN et al., Defendants-Appellees.
Roger CHAPMAN and Jeanne Chapman, Individually and on behalf
of all others similarly situated, Plaintiffs-Appellants,
v.
FIRST NATIONAL BANK OF HIGHLAND PARK, a National Banking
Association, Defendant-Appellee.
 Nos. 77-2037, 77-2023.
 United States Court of Appeals,
Seventh Circuit.
 March 10, 1980.
Rehearing and Rehearing En Banc Denied June 12, 1980.
 
 Christopher A. Bloom, Chicago, Ill., for Chapman.
 Thomas R. Meites, Chicago, Ill., for Bratton.
 Martin W. Salzman, Chicago, Ill., for defendants-appellees.
 Before SWYGERT, Circuit Judge, MOORE, Senior Circuit Judge,* and BAUER, Circuit Judge.
 SWYGERT, Circuit Judge.
 
 
 1
 This case is now before the court on remand from the Supreme Court which ordered the court to further consider our earlier decision in light of Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In our decision, reported at 585 F.2d 223,[1] we held that charter air travelers have an implied right to sue under section 401(n)(2) of the Federal Aviation Act (Act)[2] for violations of the Civil Aeronautics Board (CAB) regulations governing charter security arrangements. Having given further consideration to both Touche Ross and our earlier opinion in this case, we adhere to our decision to reverse the judgment of the district court which dismissed plaintiffs' complaint for the following reasons.
 
 
 2
 In Touche Ross the Supreme Court construed section 17(a) of the Securities Exchange Act of 1934[3] which requires broker-dealers and others to keep and file records and reports as prescribed by the Securities & Exchange Commission (SEC). Plaintiffs, customers of an insolvent brokerage firm, by court-appointed trustee and the Securities Investor Protection Corporation sued Touche Ross & Co., the brokerage house's accountants on the ground that the brokerage house's customers did not receive the benefit of federal agency enforcement because Touche Ross's filings pursuant to section 17(a) on behalf of the firm were inaccurate. Based on the set of factors set forth in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court held that no private remedy could be inferred from section 17(a) because that section was merely a recordkeeping provision designed to assist the SEC in performing its regulatory functions and did not confer rights on private parties. In its analysis, the Supreme Court found that the statute did not purport to create a private action (99 S.Ct. at 2486), did not prohibit "certain conduct" (99 S.Ct. at 2489), did not create "federal rights in favor of private parties" (99 S.Ct. at 2489), and that there was no legislative history indicating an intent of Congress to provide a private remedy (99 S.Ct. at 2486-88).[4] For these reasons the Court held that no private remedy could be inferred.[5]
 
 
 3
 Unlike the statutory provision reviewed in Touche Ross, this court found that section 401(n) of the Act was designed specifically to provide an enforceable remedy to individual air charter travelers against insolvent tour operators by providing compensation for their loss from a financially responsible third party. 585 F.2d at 232. In so holding, we looked to the express language of section 401(n) which required supplemental air carriers[6] to post a performance bond or equivalent security arrangement "in order to protect travelers * * * by aircraft * * *"[7] against the inability to obtain compensation when tour plans collapse. As we earlier concluded, "there is little doubt" that plaintiffs belong to the class for whose benefit the statute was enacted.
 
 
 4
 With respect to the existence of legislative intent to create or deny a private remedy and whether the implication of a private remedy is consistent with the underlying purposes of the statute, the second and third factors of Cort, this court found that in enacting section 401(n)(2) Congress intended to provide a remedy against a third party for travelers when agreements for air transportation were breached. 585 F.2d at 229. The provision declares that the purpose of the security arrangements is to provide "appropriate compensation to such travelers and shippers." Congress had been shown the evils which had arisen in the travel agent business and the consequences of agency insolvency, namely, cancelled trips after payment had been made, the stranding of passengers in foreign countries, and the failure to supply guaranteed accommodations, and had enacted a security provision to compensate aggrieved travelers and shippers.
 
 
 5
 Although the legislative history is scarce, there is nothing in the statute that explicitly creates or denies a private remedy. From the congressional silence, however, we have read a positive implication in favor of a private cause of action. First, Mr. Halaby, the Administrator of the Federal Aviation Agency in testifying before the Senate subcommittee on the performance bond amendment to the Aviation Act stated that:
 
 
 6
 By requiring a supplemental air carrier to furnish a performance bond, a desirable specific review of the carrier's financial responsibility will have to be made and incidentally, outside of the government and when the bond is issued, some recourse will have been supplied to those who are otherwise helpless.[8]
 
 
 7
 This intent to provide "some recourse to those who are otherwise helpless" through a bond provision is the indication of congressional intent which the Supreme Court found wanting in the general bookkeeping and record keeping provisions reviewed in Touche Ross. Second, even if there was no indication at all of congressional intent to create a private remedy that factor is not conclusive when the remedy is needed to effectuate a stated fundamental congressional purpose in enacting the amendatory provision, (J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964), and Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977)) and when there is no evidence that Congress intended to exclude a private remedy. Touche Ross, supra, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). As the Supreme Court stated in Cannon (99 S.Ct. at 1956):
 
 
 8
 We must recognize, however, that the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question. Therefore, in situations such as the present one "in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to create a private cause of action, although an explicit purpose to deny such cause of action would be controlling."
 
 
 9
 Finally, this court's conclusion that the presence of an express private remedy in section 1007 did not indicate a congressional intent to exclude other private remedies is supported by the Supreme Court's reasoning in both Cannon[9] and Touche Ross. The reasoning of these two cases plainly indicates that more is required to infer that Congress did not intend to create a particular private right than one fact that elsewhere in the same statute Congress has explicitly granted a private cause of action. For example, in Touche Ross the Supreme Court concluded that the record keeping provision under review was not intended to create private rights when other provisions which flanked that provision contained expressly-created remedies, and when one of those provisions specifically concerned false statements in reports and was enacted contemporaneously with the record keeping provision. 99 S.Ct. at 2487-2488. With respect to the case under review, sections 1007 and 401(n)(2) were not created contemporaneously nor did Congress refer to section 1007 when delimiting the scope of the right created in section 401(n)(2). In sum, considerations which the Supreme Court in Touche Ross treated as relevant in concluding that Congress did not intend to infer a private right of action do not exist in the present case.[10]
 
 
 10
 The Supreme Court in Touche Ross reaffirmed that the four indicia identified in Cort are useful guides to determining whether or not a private right of action exists. Further, the Court focused in particular on the language and legislative history of the statute in order to determine the legislative intent to create a private right of action. Although the result reached here is different from the one reached in Touche Ross, the analysis is consistent with that used in Touche Ross and Cannon and the result is compelled by the entirely different factual situation presented. Congress was shown the problems which had been caused by the insolvency of travel agents and enacted a provision to give rights to specific individuals. Accordingly, our decision to reverse the judgment of the district court and remand for further consideration of plaintiffs' complaint is reaffirmed. In addition, the First National Bank of Highland Park's motion to strike appellants' statement of position is denied and the CAB's motion to file an amicus brief is hereby granted.
 
 
 11
 BAUER, Circuit Judge, dissenting.
 
 
 12
 I adhere to the view that Section 401(n)(2) of the FAA does not create a private right of action for damages arising from an alleged violation of the CAB regulations governing air charter security arrangements. Bratton v. Shiffrin, 585 F.2d 223, 232 (7th Cir. 1978) (Bauer, J., dissenting ). I regard the majority's conclusion to the contrary to be inconsistent with a principled application of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny, the most recent of which is Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Nor can I agree that Touche Ross is factually or analytically inapposite to the case at bar. In my view, Touche Ross is dispositive of the issue before us and mandates affirmance of the judgment entered by the district court. I therefore respectfully dissent.
 
 
 13
 The sole inquiry presented by this appeal is whether or not the Congress intended Section 401(n)(2) of the Act to provide a private remedy for a violation of its terms and the CAB regulations promulgated thereunder. The resolution of this question is, quite simply, a matter of statutory construction, and it is axiomatic that the judicial construction of a statute begin with the language itself. As the Supreme Court stated in Touche Ross :
 
 
 14
 The question of the existence of a statutory cause of action is, of course, one of statutory construction . . . SIPC's argument in favor of implication of a private right of action based on tort principles, therefore, is entirely misplaced. Brief for SIPC 22-23. As we recently have emphasized, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. University of Chicago, supra, 441 U.S., at 688, 99 S.Ct., at 1953. Instead, our task is limited solely to determining whether Congress intended to create the private right of action asserted by SIPC and the Trustee. And as with any case involving the interpretation of a statute, our analysis must begin with the language of the statute itself.
 
 
 15
 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979) (citations omitted).
 
 
 16
 In applying this standard of analysis to the statute before us, it is necessary to examine the express language of Section 401(n)(2) of the Act. At the time pertinent to this case, the statute reads as follows:
 
 
 17
 In order to protect travelers and shippers by aircraft operated by supplemental air carriers, the Board may require any supplemental air carrier to file a performance bond or equivalent security arrangement, in such amount and upon such terms as the Board shall prescribe, to be conditioned upon such supplemental air carrier's making appropriate compensation to such travelers and shippers, as prescribed by the Board, for failure on the part of such carrier to perform air transportation services in accordance with agreements therefor.
 
 
 18
 49 U.S.C. § 1371(n)(2). Thus, by its terms, Section 401(n)(2) merely provides that the CAB may require supplemental air carriers to file a performance bond in such amount and upon such terms as the Board may prescribe. It does not, by its terms, purport to create a private right of action in favor of anyone. The majority concedes, as they must, that on its face Section 401(n)(2) fails to provide an express private remedy for a violation of its terms, and is therefore constrained to finding an implied private right of action in favor of the plaintiffs.
 
 
 19
 It is true that in certain circumstances a private right of action may be implied in a statute not expressly providing one. But as the Supreme Court noted in Touche Ross :
 
 
 20
 (I)n those cases finding such implied private remedies, the statute in question at least prohibited certain conduct or created federal rights in favor of private parties. E. g., Cannon v. University of Chicago, supra (20 U.S.C. § 1681); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (42 U.S.C. § 1981); Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) (15 U.S.C. § 78-j(b)); Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (42 U.S.C. § 1982); Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (42 U.S.C. § 1973c); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (42 U.S.C. § 1982); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (15 U.S.C. § 78n(a)).
 
 
 21
 442 U.S. at 569, 99 S.Ct. at 2485. By contrast, Section 401(n)(2) neither confers rights on private parties nor proscribes any conduct as unlawful. For these reasons, the majority's reliance on Cannon and Borak to sustain its finding of an implied private remedy under Section 401(n)(2) is misplaced.
 
 
 22
 In this case, as in Touche Ross vis-a-vis § 17(a) of the Securities Exchange Act of 1934, the intent of Section 401(n)(2) of the FAA is evident from its face. Section 401(n)(2) simply requires supplemental air carriers to post a performance bond or other equivalent security arrangement in order to protect charter air travelers against the inability to obtain compensation when tour plans collapse. This section parallels the other sections of the Economic Regulations of the Act, namely to provide a measure of protection in the event of liability arising from a failure to perform the underlying contract between the charter air carrier and traveler. See, e. g., 49 U.S.C. §§ 1371(a) through (n). But the language of Section 401(n)(2) does not purport to confer a private damage remedy in the event that the objective of this economic regulation is not met and the carrier becomes insolvent before other remedial action by the CAB may be taken. By its terms, Section 401(n)(2) seeks to provide protection by a security agreement independent of CAB remedial measures and, in the event of insolvency, to provide recompense to charter air travelers in a state court action on the performance bond contract. In other words, there is no basis in the language of Section 401(n)(2) for inferring that a federal civil cause of action for damages exists in favor of anyone. Touche Ross, supra at 571, 99 S.Ct. at 2486.
 
 
 23
 The majority relies on the legislative history of Section 401(n)(2) to substantiate its conclusion that the Congress intended an implied private remedy, but the legislative history of the Act is entirely silent on whether a private right of action for damages should or should not be available under § 401(n)(2) in the circumstances of this case. See, e. g., Senate Report No. 688, House Report No. 1177, Conference Report No. 1950, 87th Cong., 2d Sess., reprinted in (1962) U.S.Code Cong. & Admin.News, pp. 1844, 1844-1872. The majority concedes that "the legislative history is scarce," ante at 1231, but reasons that because the statute neither explicitly creates nor denies a private remedy, it is free to infer one. Accordingly, the majority concludes that "(f)rom the congressional silence, however, we have read a positive implication in favor of a private cause of action." Id. It seems to me that this conclusion ought to have been reached by circumspection rather than conjecture. The Supreme Court responded to the same contention in Touche Ross when it stated:
 
 
 24
 As the Court of Appeals recognized, the legislative history of the 1934 Act is entirely silent on the question whether a private right of action for damages should or should not be available under § 17(a) in the circumstances of this case. App. 198. SIPC and the Trustee nevertheless argue that because Congress did not express an intent to deny a private cause of action under § 17(a), this Court should infer one. But implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 64, 98 S.Ct. 1670, 1680, 56 L.Ed.2d 106 (1978). And where, as here, the plain language of the provision weighs against implication of a private remedy, the fact that there is no suggestion whatsoever in the legislative history that § 17(a) may give rise to suits for damages reinforces our decision not to find such a right of action implicit within the section.
 
 
 25
 99 S.Ct. at 2486-2487, 442 U.S. at 571 (citations omitted).
 
 
 26
 The paucity of legislative history on this question compels the conclusion that no private remedy should be implied in this case either, and it is simply a non sequitur to "read" a contrary conclusion from this deafening legislative silence. The sole support cited by the majority for its conclusions are the comments of Mr. Halaby. But his testimony hardly qualifies as an expression of legislative intent to create such a remedy. Mr. Halaby testified:
 
 
 27
 By requiring a supplemental air carrier to furnish a performance bond, a desirable specific review of the carrier's financial responsibility will have to be made and incidentally, outside of the government and when the bond is issued, some recourse will have been supplied to those who are otherwise helpless.
 
 
 28
 Ante at 1231, n.8. Even assuming that this testimony reflects the Congressional intent underlying the enactment of Section 401(n)(2), it does not follow from a plain reading of the quoted passage that in enacting Section 401(n)(2) the Congress evinced an intent to create a private remedy for damages. On the contrary, Mr. Halaby's comments appear to reflect that the relief sought by this section would be actionable in state court on a breach contract claim, rather than a federal statutory cause of action impliedly cognizable under Section 401(n)(2).
 
 
 29
 The majority attempts to distinguish the applicability of Touche Ross to this case on the basis that the Supreme Court found further justification for not implying a private right of action under § 17(a) of the Securities Exchange Act of 1934 because other sections flanking § 17(a) provided private rights of action. Ante at 1231-1232. But the Congress also provided explicit remedies for violations of the FAA which, in my view, compel the conclusion that these explicit remedies are the exclusive means of enforcement for a violation of the duties and obligations imposed by the Act.[1] See, e. g., 49 U.S.C. §§ 1471, 1472, 1482, 1487. The mere fact that the Congress did not enact the remedial provisions of the FAA contemporaneously with Section 401(n)(2) nor refer to these remedial provisions when delimiting the scope of the right created in that section does not extinguish the vitality of Touche Ross in the context of this appeal. As stated in Touche Ross :
 
 
 30
 Further justification for our decision not to imply the private remedy that SIPC and the Trustee seek to establish may be found in the statutory scheme of which § 17(a) is a part. First, § 17(a) is flanked by provisions of the 1934 Act that explicitly grant private cause of action. § 16(b), 15 U.S.C. § 78p(b); § 18(a), 15 U.S.C. § 78r(a). Section 9(e) of the 1934 Act also expressly provides a private right of action. 15 U.S.C. § 78i(e). See also § 20, 15 U.S.C. § 78t. Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 734, 95 S.Ct. 1917, 1919, 44 L.Ed.2d 539 (1975); see Amtrak, (National Railroad Passenger Corp. v. National Assoc. of Railroad Passengers) 414 U.S. (453) at 458, 94 S.Ct. (690) at 693, 38 L.Ed.2d 646; T. I. M. E., Inc. v. United States, supra (359), at 471, 79 S.Ct. (904) at 908.
 
 
 31
 422 U.S. at 571-72, 99 S.Ct. at 2487.
 
 
 32
 Similarly, in this case the Congress provided express remedies for a violation of the Act. E. g., 49 U.S.C. §§ 1471, 1472, 1482, 1487. If the Congress wished to provide a private remedy for damages under Section 401(n)(2), it is well aware of how it may effectuate that intent. Moreover, the import of the fact that in Touche Ross § 17(a) was flanked by other remedial provisions is merely that it provided a "further justification" not to imply a private remedy under § 17(a) of the Securities Exchange Act of 1934.
 
 
 33
 In this case, as in Touche Ross, the plaintiffs contend that an analysis of the standards set forth in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), requires a finding that Section 401(n)(2) creates an implied private right of action for damages. On remand, the majority today reaffirms its holding of an implied private cause of action as consistent with Cort. My dissent to the original decision of the Court adequately addresses what I regard to be the salient defects in the majority's analysis under Cort v. Ash, supra. Bratton v. Shiffrin, 585 F.2d 223, 232 (7th Cir. 1978) (Bauer, J., dissenting ). It is accordingly unnecessary to further explicate my views on this point, with the exception of one final comment. In Touche Ross, the Supreme Court found it unnecessary to undertake the analysis outlined in Cort v. Ash, supra, with respect to whether a private right of action arises under § 17(a) of the 1934 Act. In that connection, the Supreme Court stated:
 
 
 34
 We need not reach the merits of the arguments concerning the "necessity" of implying a private remedy and the proper forum for enforcement of the rights asserted by SIPC and the Trustee, for we believe such inquiries have little relevance to the decision of this case. It is true that in Cort v. Ash, supra, the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in Cort the language and focus of the statute, its legislative history, and its purpose, see 422 U.S., at 78, 95 S.Ct., at 2088 are ones traditionally relied upon in determining legislative intent. Here, the statute by its terms grants no private rights to any identifiable class and proscribes no conduct as unlawful. And the parties as well as the Court of Appeals agree that the legislative history of the 1934 Act simply does not speak to the issue of private remedies under § 17(a). At least in such a case as this, the inquiry ends there: The question whether Congress, either expressly or by implication, intended to create a private right of action, has been definitely answered in the negative.
 
 
 35
 442 U.S. at 575-76, 99 S.Ct. at 2489.
 
 
 36
 In this case, the statute by its terms grants no private rights in favor of any party, proscribes no conduct as unlawful, and the legislative history is similarly silent on the issue of the availability of private remedies under Section 401(n)(2) of the FAA. In my view, for these same reasons found dispositive in Touche Ross, our inquiry should also end there, and "(i)f there is to be a federal damage remedy under these circumstances, Congress must provide it." 442 U.S. at 579, 99 S.Ct. at 2490.
 
 
 
 *
 Senior Circuit Judge Leonard P. Moore of the United States Court of Appeals for the Second Circuit is sitting by designation
 
 
 [1]
 On January 11, 1979, petitions for rehearing en banc were denied by this Court and a petition for writ of certiorari followed
 
 
 [2]
 Section 401(n)(2) of the Act authorizes the CAB to prescribe security arrangements to protect air charter travelers. 49 U.S.C. § 1371(n)(2)
 
 
 [3]
 Section 17(a) reads in pertinent part:
 every broker or dealer registered pursuant to . . . this title, shall make, keep and preserve for such periods, such accounts, correspondence . . . and other records . . .
 15 U.S.C. § 78q(a).
 
 
 [4]
 The Court indicated that the central inquiry in the case was the congressional intent to create a private cause of action
 Here, the statute by its terms grants no private rights to any identifiable class and proscribes no conduct as unlawful. And the parties as well as the Court of Appeals agree that the legislative history of the 1934 Act simply does not speak to the issue of private remedies under Section 17(a). At least in such a case as this, the inquiry ends there. The question whether Congress, either expressly or by implication, intended to create a private right of action has been definitely answered in the negative.
 
 
 [5]
 Justice Brennan concurred with the majority noting that two of the four factors of Cort v. Ash were present but that no cause of action could be inferred because the plaintiff is not "one of the class for whose especial benefit the statute was enacted" and because there is no legislative history, explicit or implicit, indicating an intent to create a private remedy. (99 S.Ct. at 2491). Justice Marshall dissented, stating: "I am unwilling to assume that 'Congress simultaneously sought to protect a class and deprived (it) of the means of protection.' " (99 S.Ct. at 2491-2492)
 
 
 [6]
 "Supplemental air carriers" are carriers which operate only charters. In 1966 the Board interpreted the 1962 legislation quoted in part in note 7, infra, as authorizing it to permit charters to be organized and sold by independent tour operators as well as supplemental air carriers and adopted regulations which required these independent tour operators to provide surety bonds for the performance of their agreements with charter passengers. 14 C.F.C. § 378.16, 31 Fed.Reg. at 4781
 
 
 [7]
 As it read at the time of the relevant events of this case, § 401(n)(2) provided:
 In order to protect travelers and shippers by aircraft operated by supplemental air carriers, the Board may require any supplemental air carrier to file a performance bond or equivalent security arrangement, in such amount and upon such terms as the Board shall prescribe, to be conditioned upon such supplemental air carrier's making appropriate compensation to such travelers and shippers as prescribed by the Board, for failure on the part of such carrier to perform air transportation services in accordance with agreements therefor.
 49 U.S.C. § 1371(n)(2); emphasis added.
 
 
 [8]
 Senate Hearings on proposed amendments to the House Substitute Amendment to S. 1969, before the Aviation Subcommittee of the Senate Committee on Commerce, 87th Cong., 2nd Sess. 103 at 34-35 (March 5, 1962) quoted at page 9 of the CAB's amicus position statement
 Mr. Halaby's comments were not brought to our attention until the CAB filed a position statement as amicus curiae on remand from the Supreme Court.
 
 
 [9]
 In Cannon the Supreme Court stated:
 The fact that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under separate section.
 
 
 [99]
 S.Ct. at 1965
 
 
 [10]
 Our earlier discussion on the fourth factor in the Cort test requires no further amplification at this time
 
 
 [1]
 Indeed, the legislative history that is available regarding Section 401(n) (2) further supports the conclusion that these express remedies are the exclusive means of enforcement under the Act. As stated in the Senate Report to S. 1969, which was ultimately enacted by the Congress:
 THE ENFORCEMENT PROBLEM
 One cause for apprehension as to the possible adverse impact on the scheduled industry of the supplemental carriers, which was reflected in the committee's hearings, was the difficulties which have been encountered by the Board in effectively enforcing the limitations on supplemental operations which it has imposed in past orders. There have been rather notorious examples of supplemental carriers entering into illegal combinations resulting in a de facto pooling of their operating rights to provide scheduled service of far greater frequency and regularity than had been authorized by the Board. Efforts of the Board to end such practices by cease-and-desist orders or revocations of authority have been frustrated by protracted appeals to the court during which the Board's orders have been stayed. This has permitted the continuation of palpably illegal but highly profitable operations by carriers using every conceivable means to delay the inevitable legal sanction.
 Such operations have never been conducted by more than a handful of supplemental carriers. The vast number of such carriers have probably suffered more from such activities than have the scheduled carriers, for they have found it impossible to compete on a legal basis, offering a severely limited number of trips, with carriers who have illegally combined to provide daily scheduled service. Unfortunately, they have probably suffered even more from the less tangible damage done by such operations to the reputation of the supplemental industry. It is implicit in the committee's action on this bill that it regards the vast majority of supplemental air carriers as responsible, safe, and useful operators who have made and will continue to make a major contribution to the development of air transportation, and particularly to national defense. The committee is determined that the supplemental industry, as well as the scheduled industry, be more effectively protected from the depredations of illegal operators.
 In recommending the means to accomplish this end the committee has accepted the recommendations of the Civil Aeronautics Board, made continually over several years, that the civil penalties now provided in the Federal Aviation Act for violations of safety and other provisions of the act be made applicable to violation of the economic provisions under title IV and of certificates issued thereunder. Section 901 of the act now provides a civil penalty not to exceed $1,000 for each violation and provides that in the case of a continuing violation each day shall constitute a separate offense subject to the $1,000 penalty. The committee bill would amend this section to make it applicable to the provisions of title IV and certificates issued thereunder, and would thus provide the Board with the weapon it has lacked the ability to take the profit out of illegal operations performed over a long period of time under a judicial stay.
 Senate Report No. 688, 87th Cong., 2d Sess., reprinted in (1962) U.S.Code Cong. & Admin.News, pp. 1844, 1855-1856 (emphasis supplied).